NOT DESIGNATED FOR PUBLICATION

No. 121,774

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

LEVI LOVE,
*Appellant*,

v.

DAN SCHNURR, et al.,
*Appellees*.

MEMORANDUM OPINION

Appeal from Reno District Court; JOSEPH L. MCCARVILLE III, judge. Opinion filed February 26, 2021. Affirmed.

*Levi Love*, appellant pro se.

*Jon D. Graves*, legal counsel, of Kansas Department of Corrections, for appellees.

Before GARDNER, P.J., SCHROEDER, J., and WALKER, S.J.

PER CURIAM: Levi Love appeals the district court's summary dismissal of his K.S.A. 60-1501 petition as untimely. Love's petition alleges that the Kansas Department of Corrections (KDOC) improperly denied his grievance, which contended the Department illegally changed his controlling sentence from life imprisonment to 816 months. Although the district court's basis for dismissing the petition is not in accord with the record, its ultimate conclusion is correct. Kansas regulations require inmates to file a formal grievance within 15 days of becoming aware of the issue giving rise to the grievance. In no event can a grievance be filed later than one year after the event giving

1

rise to the grievance. Love missed both deadlines. Because the time limits are jurisdictional, the district court's decision dismissing Love's petition is affirmed.

FACTS

In 1997, Love was sentenced for two crimes. On one count he got life imprisonment with the possibility of parole after 25 years; on the other he received 816 months' imprisonment. The court ordered the sentences to run concurrently. Love believes that his life sentence is controlling and that after 25 years he should be eligible for release from prison. However, he asserts that State officials illegally changed his sentence to make the 816-month sentence controlling, thus depriving him of the possibility of parole after 25 years. Love informally raised the issue with prison officials in 2014 and again in October 2017 but did not file a formal grievance until July 2018. When his grievance was denied, Love filed a K.S.A. 60-1501 petition in October 2018.

Although the issues that Love raised in his petition relate to the sentences he received in 1997, he did not include the original journal entry of judgment detailing what those crimes were and how he was sentenced. It appears that he was convicted of murder and attempted murder. These convictions were affirmed by the Kansas Supreme Court in *State v. Love*, 267 Kan. 600, 986 P.2d 358 (1999). Love did include a portion of the transcript from his sentencing hearing in the record where the district court sentenced him to "life on Count 1 and 816 months on Count 2, concurrent." The sentencing judge also stated that Love would have to serve 25 years of the life sentence before he was eligible for parole. Love's sentence for the 1997 case was ordered to run consecutive to a prior sentence. See *Love v. State*, 280 Kan. 553, 124 P.3d 32 (2005).

The general argument in Love's petition is that State officials illegally changed his controlling sentence from the life sentence to the 816-month sentence. He noted that when sentences run concurrently, the longer sentence controls. Consequently, Love

2

argues that because life imprisonment is longer than 816 months, the life sentence should control and he should be eligible for parole and release from prison in 2022. As the basis for his grievance and habeas corpus petition, Love alleges that KDOC officials illegally changed his sentence by making the 816-month sentence controlling.

The obvious flaw in Love's basic contention is that parole at the end of 25 years of prison service on his life sentence, or indeed at any time during Love's lifetime, is entirely discretionary with the Kansas Prisoner Review Board (the paroling authority) and might never be granted. See K.S.A. 2019 Supp. 22-3717(g). And, even if Love was paroled on his life sentence, he would not be released until he had served a total of 816 months (68 years) on his other concurrent sentence with a possible reduction of time through earning good time credits. See K.S.A. 2019 Supp. 21-6821. Likewise, if Love were somehow to complete serving his 816-month sentence, but had never been granted discretionary parole on his life sentence, he still could not leave prison. So, whatever KDOC lists as Love's controlling sentence appears, on its face, to be of academic interest only and not based on the clear requirements of Kansas sentencing law.

But Love's K.S.A. 60-1501 petition, the district court's decision, Love's subsequent appeal, and the briefs of the parties all revolve exclusively upon whether KDOC properly dealt with his grievance. Therefore, we will confine our decision solely to that issue.

Although the record is unclear as to when KDOC changed Love's controlling sentence from life imprisonment to 816 months in its records, it appears Love was aware of it as early as 2014 because he submitted several Form 9s (Inmate Request to Staff Member forms) raising the issue. Love argues that his sentence must be corrected because the State violated his constitutional rights when it eliminated his chance of being released after serving 25 years of his sentence. Love attached assorted documents to his

3

petition showing that at times his life sentence was listed as controlling and at others the 816-month sentence was listed as controlling.

Sometime in October 2017, Love filed additional Form 9s raising the issue. At some point Love wrote to Warden Dan Schnurr, who replied in a letter dated October 5, 2017. Warden Schnurr informed Love that his sentences run concurrently and therefore the sentence that causes Love to serve the longest term controls. The letter stated that it would "serve as a final response on the subject."

Love did not take further action until July 9, 2018, when he filed another Form 9. In it, he stated that he had only just received the October 5, 2017 letter from Warden Schnurr. The response from Unit Team Supervisor Lamb was that Warden Schnurr's response was provided to Love on October 5, 2017, the issue had been reviewed multiple times by multiple staff members, and Warden Schnurr's response was final.

Love filed a formal grievance July 27, 2018. In this grievance, Love said that he had up to a year to grieve Warden Schnurr's final response. Unit Team Supervisor Lamb denied the grievance, explaining that Love's 816-month sentence controlled because it was significantly longer than the 25-year sentence. Love appealed to Warden Schnurr, who denied the grievance on August 23, 2018. Warden Schnurr said that this was his final answer to Love on the matter, and any subsequent grievances would be returned to Love with no further response. Love appealed this to the Secretary of Corrections on August 27, 2018. He was denied again in a response dated September 4, 2018. The response was mailed to Love on September 7, 2018, and provided to him on September 14, 2018. Love filed his K.S.A. 60-1501 petition on October 11, 2018.

The district court summarily dismissed Love's petition. The court held that the final order in this case was Warden Schnurr's October 5, 2017 letter and that Love had to appeal from that order within 30 days. Because Love failed to do so, his petition was

4

untimely. In regard to Love's grievance filed in the fall of 2018, the district court held that Love was not permitted to start another 30-day appeal period by writing a new grievance.

Love has timely appealed from the district court's decision.

ANALYSIS

At the outset, we note that the State asks us to dismiss Love's appeal due to his failure to include proper citations to the record and because he failed to include the journal entry of sentencing from his 1997 case. While Love's brief is messy, his failure to include citations does not preclude appellate review. Because we are dealing with a summary dismissal of a K.S.A. 60-1501 petition, we must simply consider all of the facts pled in the petition. Additionally, resolution of the issues on appeal does not require the missing journal entry, so its omission also does not prevent appellate review. We decline the State's request.

We also note that Love filed a postbriefing letter pursuant to Kansas Supreme Court Rule 6.09 (2020 Kan. S. Ct. R. 39). The purpose of Rule 6.09 is to permit a party to "advise the court, by letter, of citation to persuasive or controlling authority that has come to the party's attention after the party's last brief was filed." (2020 Kan. S. Ct. R. 39). After carefully reviewing Love's letter, which is actually a 29-page document, including attachments already in the record, we find that it is, in reality, a reiteration and reargument of the issues Love has already raised and argued in his original brief. Our scrutiny has revealed no new "persuasive or controlling authority" newly discovered by Love.

On appeal, Love argues that the district court erred in summarily dismissing his petition. He asserts that he successfully exhausted his administrative remedies through

5

the grievance procedure within one year after first discovering that his sentence was illegally changed. And, he argues that he timely appealed to the district court from the final decision from the Secretary of Corrections.

Summary dismissal of a K.S.A. 60-1501 petition is appropriate "[i]f it plainly appears from the face of the petition and any exhibits attached thereto that the plaintiff is not entitled to relief in the district court." K.S.A. 2019 Supp. 60-1503(a). We review the summary dismissal of a K.S.A. 60-1501 petition de novo. *Johnson v. State*, 289 Kan. 642, 649, 215 P.3d 575 (2009).

An inmate must file a K.S.A. 60-1501 petition within 30 days from the date the action complained of was final, "but such time is extended during the pendency of the inmate's timely attempts to exhaust such inmate's administrative remedies." K.S.A. 2019 Supp. 60-1501(b); see also K.S.A. 75-52,138 (requiring inmates to exhaust administrative remedies before filing a civil action against State officials). The administrative regulations adopted by KDOC which establish grievance procedures for inmates are located in K.A.R. 44-15-101 et seq.

A grievance must "be filed within 15 days from the date of the discovery of the event giving rise to the grievance, excluding Saturdays, Sundays and holidays." K.A.R. 44-15-101b. Additionally, "[n]o grievance, regardless of time of discovery, shall be filed later than one year after the event." K.A.R. 44-15-101b.

The grievance procedure is three-tiered. K.A.R. 44-15-102. At step one, the inmate attempts to informally resolve the issue with an appropriate unit team member in the facility. K.A.R. 44-15-101(d)(1); K.A.R. 44-15-102(a). In step two, if the inmate receives an unsatisfactory response, he or she may submit the grievance to the warden of the institution where he or she is incarcerated. K.A.R. 44-15-101(d)(2); K.A.R. 44-15-

102(b). If the warden denies the grievance, the final step in the process is an appeal to the Secretary of Corrections. K.A.R. 44-15-101(d)(3); K.A.R. 44-15-102(c).

The district court held that Warden Schnurr's October 5, 2017 letter constituted the final order in this case from which Love had 30 days to appeal. This is not entirely correct. Under the regulations, the final response must come from the Secretary of Corrections. However, we have concluded that the district court should be affirmed in summarily denying the petition for a different reason. See *Rose v. Via Christi Health System, Inc.*, 279 Kan. 523, 525, 113 P.3d 241 (2005) ("The reason given by the trial court for its ruling is immaterial if the result is correct.").

Although not noted by the district court, there is a jurisdictional problem with Love's petition: he failed to demonstrate that his attempts to exhaust his administrative remedies were timely as required by K.S.A. 2019 Supp. 60-1501(b). The record is unclear as to when the allegedly erroneous KDOC decision determining Love's controlling sentence to be 816 months occurred. But it is clear that Love was aware of it by 2014, meaning that it must have occurred before then.

Kansas regulations state that no grievance can be filed later than one year after the event giving rise to the grievance. K.A.R. 44-15-101b. Love's grievance was clearly filed outside of this one-year time limit. Even if this was not a problem, Love was aware of the issue as early as 2014 based on the statement of facts in his petition (although in his appellate brief he asserts he did not become aware of the issue until October 2017). To comply with KDOC regulations, Love had 15 days after the date of the discovery of the event giving rise to the grievance to file a grievance. K.A.R. 44-15-101b. Given that the earliest grievance attached to Love's petition is from July 27, 2018, it is evident that Love failed to timely grieve the issue. Because these time limits are jurisdictional, they cannot be waived. *State v. Hoffman*, 45 Kan. App. 2d 272, 275, 246 P.3d 992 (2011).

7

A similar issue arose in *Smeltzer v. Sullivan*, No. 112,489, 2015 WL 1402915 (Kan. App. 2015) (unpublished opinion). Although that case involved a person committed to Kansas' sexual predator treatment program (SPTP) and not an inmate, it did involve identical regulations requiring grievances to be submitted within 15 days of discovering the event giving rise to the grievance. Charles Smeltzer filed a K.S.A. 60-1501 petition alleging that from December 11-13, 2012, a security officer improperly confiscated his property. However, Smeltzer did not file a grievance until seven months after the event. Despite its untimeliness, the State addressed the grievance and denied it at each step of the administrative review process. When Smeltzer filed his K.S.A. 60-1501 petition, the district court dismissed it in part because Smeltzer had failed to make timely efforts to pursue his administrative remedies.

Although the case was remanded on other grounds, this court affirmed the district court on the timeliness issue. 2015 WL 1402915, at *2. Smeltzer argued that he was attempting to informally address the situation as suggested by State policies. As is the case here, SPTP policy encouraged residents to reach an informal resolution of a matter with the personnel who worked with the residents on a direct or daily basis. However, a panel of our court held that the policy did not toll the 15-day time limit to submit a formal grievance form after becoming aware of an issue. 2015 WL 1402915, at *3. Smeltzer also argued that the State waived the deadlines by addressing his untimely grievance. But the panel held that the State could not waive jurisdiction. 2015 WL 1402915, at *4.

Love also argues that his fall 2017 communications with staff members and Warden Schnurr were merely informal attempts at resolving the sentencing issue and that he took the steps pursuant to State regulations. The problem is that Love did not have an infinite amount of time to seek informal resolutions. He had to file the grievance within 15 days of discovering the issue. However, he did not file a grievance until almost a year later. For these reasons, the district court was without jurisdiction to consider the claims in Love's petition.

Since we believe the jurisdictional issue controls the outcome of this appeal, we will not address the State's additional argument that K.A.R. 44-15-101a(d)(2) prohibits the use of grievance procedures for sentencing computation issues. It is an interesting question, but not one we need answer to resolve this appeal.

The district court's decision summarily denying Love's K.S.A. 60-1501 petition is affirmed.

Affirmed.